IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LOIS HARMON, et al., | ) | CASE NO.    5:21 CV 199 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| | ) | |
| DOLGEN MIDWEST, LLC, dba, | ) | MEMORANDUM OPINION |
| DOLLAR GENERAL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the Motion for Summary Judgment filed by Defendant,

Dolgen Midwest, LLC ("Dollar General") (Docket #65), along with the Motion to Reconsider

filed by Plaintiffs, Lois Harmon ("Ms. Harmon") and Charles Harmon. (Docket #64).

I.      **Factual and Procedural Background.**[1]

On August 11, 2019, Jacob Santucci ("Mr. Santucci"), a merchandiser for Defendant,

Bottling Group LLC ("the Bottling Group"), was at the New Franklin, Ohio, Dollar General

---

[1]

The facts as stated in this Memorandum Opinion and Order are taken from the
Parties' submissions.  Those material facts that are controverted and supported by
deposition testimony, affidavit, or other evidence are stated in the light most favorable to
the non-moving Party.

Store between noon and 1:00 p.m., stocking single-serve, 20-ounce, Pepsi products. (Deposition of Jacob Santucci, Docket #47, at pp. 8-10.) Mr. Santucci testified that while stocking a cooler with the 20-ounce bottles of soda, something caused a bottle to pop out. When he went to grab for another, a bottle fell to the ground, resulting in the cap cracking and the soda spilling out onto the floor. (Id. at pp. 9-10.)

According to Mr. Santucci, the spill occurred in front of the cooler he was stocking, which was located a little further down from the milk cooler. He testified that the spill was small and did not travel down the aisle to the coolers which held milk. (Id.) Mr. Santucci testified that he put his cart over the spill to cover it momentarily and went to ask a Dollar General Store employee where he could find a mop and caution sign. (Id. at 10.) He mopped the spill from the floor and then placed a caution sign at the site. Mr. Santucci testified that he checked the area to ensure the spill was adequately cleaned and nothing remained on the floor. Before leaving the Dollar General Store, he noted that the caution sign was still visible in the location he had placed it, where the spill occurred. (Id. at 11-12; 13.)

Ms. Harmon arrived at the Dollar General Store at approximately 3:00 p.m. on August 11, 2019 to purchase milk. (Deposition of Lois Harmon, Docket #49-1, at pp. 12-13.) Once she arrived, Ms. Harmon walked in the front door and down an aisle where, at the end, the coolers containing milk were situated. (Id. at p. 13.) At the end of that same aisle, Ms. Harmon testified she saw an endcap display containing Natural Lite, a walkway, and then the coolers with the milk. (Id. at p. 15.) As Ms. Harmon walked down the aisle, but before she reached the end where the endcap display was located, she felt her right foot get stuck, causing her to lose balance and fall forward. Ms. Harmon struck her head on a cooler door and injured her right

knee.  (Id. at pp. 15-16; 18-19; and, 35.)[2]

At the time of the fall, Paula Billinovich ("Ms. Billinovich"), Assistant Manager of the Dollar General Store, was a couple of aisles over; heard someone yell; and, went to the aisle where Ms. Harmon had fallen.  Ms. Billinovich testified that at this time, she did not notice any sticky substance or hazard on the floor.  She did see that warnings signs from the earlier spill were still in place.  (Deposition of Paula Billinovich, Docket #46, at pp. 17; 28-29; 33; and, 40.)  Ms. Billinovich took pictures of the warning signs with her personal cell phone.  (Id. at p. 29.)  Later that day, around 6:00 p.m., Steven Harmon ("Mr. Harmon"), Ms. Harmon's son, arrived at Dollar General and, during conversation with Ms. Billinovich, learned that Dollar General's merchandiser had been in the store earlier to stock shelves and had caused a spill and cleaned it up.[3]

An Incident Report was completed and Rodney Mercer, a Senior Claims Representative with Dollar General, contacted the Dollar General Store within the following days to gain additional information about the incident.  (Deposition of Rodney Mercer, Docket #66-1, at p.

---

2

At the time of her deposition, Ms. Harmon was shown a photograph depicting the area of the Natural Lite endcap display, the walkway aisle, and the coolers.  She marked the area she alleges was sticky, and the area where she fell, striking her head, with an "X". (See Docket #s 53-3 and 53-4, Exhibits A and D.)  Mr. Santucci was also shown the photograph of the area and testified that the spill resulting from him stocking product did not occur in the same area, but rather several coolers away, in an area not depicted in the photograph.  (Santucci Dep., pp. 13-14.)

3

Mr. Harmon testified that during his conversation with Ms. Billinovich, Ms. Billinovich did not indicate the actual location of the spill. (Deposition of Steven Harmon, Docket #48 at p. 9.)  Mr. Harmon contends, and Ms. Billinovich disputes, ever referring to the unidentified area as "sticky." (Docket #46 at p. 38; Docket #48 at pp. 6 and 8-9.)

69.)  Mr. Mercer spoke to April Brink, an employee who was not present when Ms. Harmon fell, but had come to work later that day.  (Id. at p. 69.)  Ms. Brink informed Mr. Mercer that there were no store cameras that would have captured Ms. Harmon's fall and that she had no knowledge of the incident other than what was written in the Incident Report.  (Id. at pp. 71-72.)

TIG Risk Services, the company that preserves Dollar General's surveillance video, was sent to the Dollar General Store to obtain any available video footage.  On August 23, 2019, Tina Perkins of TIG emailed Mr. Mercer, notifying him that TIG's attempts to retrieve the video were unsuccessful.  (Docket #70-2 at p. 15.)  That same day, Mr. Mercer contacted Sharon Stamper, Senior Tech Support Manager with Integrated Security Systems ("ISS"), for "guidance or suggestions" on how to retrieve the video.  Ms. Stamper responded immediately that the error on the store DVR indicated a "motherboard issue."  She planned to ship a new DVR to the store and pick up the old DVR to retrieve the video.  Mr. Mercer responded, thanking Ms. Stamper, and indicating he would "need all camera angles from 8/11/19 between 14:15 - 16:15."  (Docket #70-2 at pp. 11-13.)

On August 29, 2019, Ms. Harmon's attorney sent Dollar General a letter, indicating his client was contemplating litigation and asking Dollar General to preserve all potentially relevant evidence.  (Docket #68 at pp. 26-27.)  On September 18, 2019, Mr. Mercer contacted Ms. Stamper to check the status of the video.  (Docket #72-2 at p. 13.)  Ms. Stamper responded on September 19, 2019, stating that she had not yet received the DVR from the Dollar General store.  (Id. at p. 12.)  On December 10, 2019, Mr. Mercer contacted Ms. Stamper to see if she had received the DVR.  Ms. Stamper indicated she had the DVR and that the "tech" would "pull" the video that day.  (Id.)  On December 11, 2019, Ms. Stamper emailed Mr. Mercer and

-4-

indicated that ISS was "not able to get the video for this store." Mr. Mercer responded to Ms. Stamper's December 11, 2019 email, asking, "Had it rotated off?" – meaning, had the video been automatically erased from the DVR after a certain period of time, as was common. (Id. at p. 11.)

There is no documentation of Ms. Stamper's response to Mr. Mercer's December 11, 2019 email. However, in her Affidavit, Ms. Stamper explains ISS's efforts to retrieve video footage from the day of Mr. Harmon's fall, which were ultimately unsuccessful, stating in pertinent part as follows:

> 3. At the time of the incident with Lois Harmon, the surveillance system was not in proper working order. Multiple attempts were made to fix the surveillance system in the hopes that video footage could somehow be found and extracted. However, all attempts to retrieve video footage of August 11, 2019 proved unsuccessful.
>
> 4. As a result, Dollar was never in possession of any surveillance video footage that captured the incident with Lois Harmon.

(Docket #65-4.)

Ms. Billinovich does not recall ever telling anyone at Dollar General that she had taken photos of the warning sign that had been posted on the day of Ms. Harmon's fall. Dollar General never asked Ms. Billinovich to preserve any evidence from that day. (Docket #46-1 at pp. 30-31.) Ms. Billinovich testified that approximately one year after Ms. Harmon's fall, she deleted the photos from her cell phone. Ms. Billinovich was unaware of Ms. Harmon's lawsuit; was no longer an employee of Dollar General; and, indicated during her deposition that she was "cleaning out [her] phone and getting rid of all the pictures and it went" and "that it had been almost a year so [she] figured they weren't going to sue." (Id. at p. 31.)

**Plaintiffs' Complaint.**

On December 17, 2020, Plaintiffs filed their Complaint against Defendants, Dollar General Corporation and PepsiCo., Inc., in the Summit County Court of Common Pleas, Case No. CV- 2020-12-3508.  On January 25, 2021, Defendants removed the case to this Court pursuant to 28 U.S.C. § 1441(a).  In subsequent Amended Complaints, Plaintiffs properly named Defendant, Dolgen Midwest, LLC, doing business as Dollar General, and substituted the Bottling Group LLC for PepsiCo., Inc.  (Docket #s 15 and 26.)

On August 26, 2021, Plaintiffs filed their Third Amended Complaint (the "Complaint") (Docket #51) alleging the following: Premises Liability against Dollar General (First Cause of Action); Negligence against the Bottling Group (Second Cause of Action); Loss of Consortium against all Defendants (Third Cause of Action); Spoliation of Evidence against Dollar General (Fourth Cause of Action); and, a claim for Punitive Damages against Dollar General (Fifth Cause of Action).

**The Bottling Group's Motion for Summary Judgment.**

On August 30, 2021, the Bottling Group filed its Motion for Summary Judgment against Plaintiffs.  (Docket #53).  On August 31, 2021, Plaintiffs filed an Opposition Brief.  (Docket #54.)  On September 9, 2021, the Bottling Group filed its Reply Brief.  (Docket #58.)

On November 8, 2021, the Court granted the Bottling Group's Motion for Summary Judgment, finding that there was "no evidence to support Plaintiffs' position that Defendant Bottling Group created or caused a hazardous condition resulting in Ms. Harmon's slip and fall on August 11, 2019" and "no evidence . . . that Mr. Santucci's spill was still present or that the alleged sticky substance was located in the aisle of incident when Ms. Harmon arrived at the

-6-

Dollar General approximately two hours later around 3:00 p.m. on August 11, 2019." (Docket #64 at pp. 7-8.)  "Mr. Santucci's spill occurred elsewhere in the store, in a walkway aisle located a few coolers down from where the milk is located." (Id. at p. 8.)  In its Memorandum Opinion and Order, the Court stated as follows:

> Plaintiffs cannot show that Defendant Bottling Group created the alleged sticky substance Ms. Harmon argues caused her to fall on August 11, 2019. Plaintiffs also cannot show that Defendant Bottling Group breached a duty to Ms. Harmon such that it can be held liable for negligence in causing her to sustain injuries from her fall.  Defendant satisfied its duty to Plaintiffs by promptly cleaning the spill and placing a caution sign to warn guests of the potential hazard.  Based on its review of the record and all evidence, there exists no genuine issue of material fact for Plaintiffs' claims against Defendant Bottling Group such that a reasonable juror could find Defendant liable in negligence for Ms. Harmon's fall and injuries. Accordingly, the Court finds summary judgment in favor of Defendant Bottling Group is appropriate on all claims.

(Docket #64 at p. 9.)

**Dollar General's Motion for Summary Judgment.**

On December 15, 2021, Dollar General filed its Motion for Summary Judgment. (Docket #65.)  On January 10, 2022, Ms. Harmon filed her "Memorandum Contra Defendant Dolgen Midwest, LLC's Motion for Summary Judgment and Motion to Reconsider" (Docket #68), asking the Court to deny Dollar General's Motion for Summary Judgment and reconsider its November 8, 2021 decision granting summary judgment in favor of the Bottling Group.  On January 24, 2022, Dollar General filed its Reply Brief.  (Docket #70.)

**II.     Standard of Review.**

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law." FED. R. CIV. P. 56(a).  The burden of showing the absence of any such "genuine issue"

rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of
> informing the district court of the basis for its motion, and identifying those portions
> of 'the pleadings, depositions, answers to interrogatories, and admissions on file,
> together with affidavits, if any,' which it believes demonstrates the absence of a
> genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986).  A fact is "material" only if its resolution will

affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Determination of whether a factual issue is "genuine" requires consideration of the applicable

evidentiary standards.  The court will view the summary judgment motion in the light most

favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial

does not establish an essential element of their case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d

937, 941 (6th Cir. Ohio 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "[t]he mere

existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there

must be evidence on which the jury could reasonably find for the plaintiff."  *Copeland v.

Machulis*, 57 F.3d 476, 479 (6th Cir. Mich. 1995) (citing *Anderson*, 477 U.S. at 252).  Moreover,

if the evidence presented is "merely colorable" and not "significantly probative," the court may

decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citations

omitted).

Once the moving party has satisfied its burden of proof, the burden then shifts to the

nonmoving party.  The nonmoving party may not simply rely on its pleadings, but must "produce

evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. Ky. 1995).  FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248.  The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249.  The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III.    Discussion.

### A.      Premises Liability.

A business owner owes a duty to its invitees to maintain its premises in a "reasonably

-9-

safe condition" and to warn of hidden or latent dangers. *McGuire v. Sears, Roebuck & Co.*, 118 Ohio App. 3d 494, 497, 693 N.E.2d 807 (Hamilton Cty. Sept. 25, 1996). Under Ohio law, in order to recover damages from a slip and fall accident, a business invitee Plaintiff must establish one of the following: that the defendant through its officers or employees was responsible for the hazard complained of; that at least one of such persons had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly; or, that such danger had existed for a sufficient length of time reasonably to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care. *Dowling v. Cleveland Clinic Found.*, 593 F.3d 471, 476 (6th Cir. Ohio 2010)(citing *Beard v. Kroger*, 133 F. App'x, 175-76 (6th Cir. Ohio 2005)).

"The mere fact that a customer slips and falls on the floor of a business establishment does not, standing alone, create an inference that the floor was unsafe." *Eller v. Wendy's Int'l, Inc.*, 142 Ohio App. 3d 321, 334 (10th Dist. Franklin County Sept. 29, 2000)(citing *J.C. Penny Co. v. Robison*, 128 Ohio St. 626, 193 N.E. 401, paragraph 4 of the syllabus (1934)). "Rather, there must be evidence tending to show that some negligent act or omission of the business owner caused the fall." *Id.*

As set forth above, Ms. Harmon testified that she never saw a substance on the floor and Plaintiffs offer no evidence to back up their claim that there was a sticky residue in the aisle where and when Ms. Harmon tripped. The evidence of record demonstrates that Mr. Santucci's earlier soda spill occurred in a different area of the store and there is no evidence that Dollar General created or caused a hazard, or permitted any hazardous condition to persist in the area in question. There is no evidence from which one could infer that the floor where Ms. Harmon

-10-

tripped was unsafe and Plaintiffs have failed to establish that a negligent act or omission by Dollar General caused Ms. Harmon's fall. Accordingly, Dollar General is entitled to summary judgment as to Plaintiffs' claim for premises.

> **B.** **Spoliation of Evidence.**

Plaintiffs allege that Dollar General knowingly and willfully ignored and/or intentionally violated Plaintiffs' demands to preserve evidence by willfully and purposefully destroying store video footage and intentionally deleting cell phone photos taken on the day of Ms. Harmon's fall.

Under Ohio law, a claim for spoliation of evidence requires proof of the following: (1) pending or probable litigation involving the plaintiff; (2) knowledge on the part of defendant that litigation exists or is probable; (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case; (4) disruption of the plaintiff's case; and, (5) damages proximately caused by the defendant's acts. *Smith v. Howard Johnson Co.*, 67 Ohio St. 3d 28 (1993). "In a spoliation case, the term 'willful' reflects an intentional and wrongful commission of the act." *Stillwagon v. City of Delaware*, 274 F. Supp. 3d 714, 779 (S.D. Ohio 2017), aff'd in part, appeal dismissed in part sub nom. *Stillwagon v. City of Delaware, Ohio*, 747 F. App'x 361 (6th Cir. Ohio 2018) (citation and quotations omitted). "Acts that are willful include those committed with premeditation, malice, or a bad purpose." *Maynard v. Jackson Cty. Ohio*, 706 F. Supp. 2d 817, 829 (S.D. Ohio 2010) (citations omitted).

There is no evidence that Dollar General willfully destroyed video footage from the Dollar General store in an effort to disrupt Plaintiffs' case. In fact, there is no evidence that video footage from the day in question – either of Mr. Santucci's soda spill earlier in the day or

-11-

of Ms. Harmon's trip and fall – ever existed. Dollar General attempted, over the course of several months, to retrieve video footage from the store security camera/DVR system with the assistance of its outside risk and security services vendors, but was ultimately unsuccessful. There is no evidence that any delays in that process were the result of premeditation, malice or a bad purpose.

Likewise, there is no evidence that Ms. Billinovich or Dollar General wrongfully destroyed cell phone photos taken by Ms. Billinovich on the day of Ms. Harmon's fall. Ms. Billinovich had taken photos on her personal cell phone, shortly after Ms. Harmon's fall, of the warning signs that had been placed in the area of the spill earlier in the day by Mr. Santucci. There is no evidence that Dollar General knew Ms. Billinovich had taken any photos; Ms. Billinovich does not recall telling anyone at Dollar General that she had taken any photos; and, no one from Dollar General ever approached Ms. Billinovich to ask if she had any photos from the day in question or told her to preserve any evidence she may have. (Docket #46-1 at pp. 30-31.) Dollar General admits it never instructed Ms. Billinovich to preserve any relevant evidence, but there is no evidence that the failure to do so was motivated by an improper purpose. Ms. Billinovich deleted the pictures from her phone approximately one year after Ms. Harmon's fall. At that time, she was no longer an employee of Dollar General and was unaware of Ms. Harmon's lawsuit. (Id. at p. 30.) Ms. Billinovich stated during her deposition that she was "cleaning out [her] phone and getting rid of all the pictures and it went" and "that it had been almost a year so [she] figured they weren't going to sue." (Id. at p. 31.) There is no evidence that Ms. Billinovich's decision to delete the photos was premeditated, malicious or in any way motivated by an improper purpose.

For the foregoing reasons, Dollar General is entitled to summary judgment on Plaintiffs' spoliation of evidence claim.

**C.     Derivative claims.**

Plaintiffs have failed to establish a prima facie case of negligence or spoliation against Dollar General.  Accordingly, Plaintiffs' derivative claims for loss of consortium and for punitive damages fail as a matter of law.  *Graham v. Am. Cyanamid Co.*, 350 F.3d 496, 514-15 (6th Cir. Ohio 2003).

**IV.     Conclusion.**

For the foregoing reasons, the Motion for Summary Judgment (Docket #65) filed by Defendant, Dolgen Midwest, LLC, is hereby GRANTED.

There is no basis upon which to reconsider this Court's Memorandum Opinion and Order granting summary judgment in favor of Defendant, Bottling Group LLC.  The Motion to Reconsider (Docket #68) filed by Plaintiffs is hereby DENIED.

This case is hereby terminated.

IT IS SO ORDERED.

_Donald C. Nugent_
DONALD C. NUGENT
Senior United States District Judge

DATED: _February 22, 2022_